27 C.C.P.A.(Patents)

### RANDEL v. BABCOCK.

Patent Appeals No. 4323.

Court of Customs and Patent Appeals.

June 24, 1940.

Wm. T. Hedlund, of New York City (J. F. Mothershead, of Washington, D. C., and Frank H. Harmon, of New York City, of counsel), for appellant.

George A. Brace, of Chicago, Ill. (Harry S. Demaree, of Chicago, Ill., and Elmer Stewart, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority of inven-

tion upon the counts here involved to appellee.

The counts in issue read as follows:

"1. That improvement in the art of refrigeration by the aid of a system containing absorbent fluid, refrigerant fluid, and additional fluid for equalizing pressure which consists in vaporizing the absorbent, passing said vapor into an injector, condensing part of said vapor in said injector for supplementing the energy required for said passing step, and occasioning thereby an increased velocity of said vapor and its product, and utilizing the energy in said increased velocity to circulate with said vapor and its product a mixture of refrigerant vapor and inert vapor between an absorber and an evaporator.

"2. That improvement in the art of refrigeration by the aid of a system containing absorbent fluid, refrigerant fluid, and additional fluid for equalizing pressure which consists in vaporizing an absorbent, passing a portion of said vapor through an injector, condensing said vapor in said injector causing an increased velocity and utilizing the energy in said increased velocity to circulate a mixture of refrigerant vapor and inert gas between an absorber and an evaporator."

The interference is between a patent to appellant and an application by appellee filed September 1, 1933. The application is a renewal of an application filed May 21, 1930. Appellant's patent No. 2,052,-580 was issued September 1, 1936 upon an application filed November 14, 1932. The interference was originally declared December 14, 1936, upon count 1 taken from appellant's patent. In response to an order to show cause, dated January 30, 1937, appellant moved to dissolve the interference on the ground that a portion of the count reading "condensing part of said vapor in said injector for supplementing the energy required for said passing step and occasioning thereby an increased velocity of said vapor and its product" is not disclosed in the application of appellee and therefore that he cannot make the count.

On March 12, 1937, appellee moved, under Rule 109 of the Rules of Practice of the United States Patent Office, to add to the interference his claims 32 to 38, inclusive, which are claims 5, 6, 8, 11, 12, 14 and 16 of the patent to appellant, or,

in case they were deemed unsupported by the application of appellee, that the interference be reformed by adding any one or all of claims 49 to 55 of appellee's application. The said motions of the parties were denied by the Primary Examiner. Appellee appealed from the decision of the Primary Examiner to the Board of Appeals which reversed the decision of the Primary Examiner as to proposed claim 33 of appellee, which is claim 6 of apellant's patent, and affirmed the decision in all other respects. The interference was redeclared July 2, 1938, by adding to count 1 of the original interference said claim 6, which is count 2 in the interference as redeclared.

An order to show cause, dated August 11, 1938, as to the added count issued against appellant giving him notice that unless he should, on or before August 22, 1938, show good and sufficient cause why such action should not be taken judgment on the record would be entered against him. There was no response to the order to show cause and the Examiner of Interferences awarded priority of invention of the subject matter of both counts to appellee for the reason that all of the dates alleged in the preliminary statement of appellant were subsequent to the filing date of appellee.

Appellant appealed to the Board of Appeals which, on June 13, 1939, affirmed the decision of the Examiner of Interferences and subsequently, by a decision upon a request for reconsideration, refused to modify its holding.

The invention relates to an apparatus of the three fluid absorption type for producing refrigeration solely by heat energy. The type of refrigeration system disclosed in the invention comprises a refrigerant generator, a condenser, an evaporator and an absorber. The system is charged with ammonia as a refrigerant liquid, water as an absorbent for the refrigerant, and a third liquid, either propane or hydrogen.

The common subject matter appears to be the vaporizing of some of the absorbent and passing the vapor through a jet or injector to circulate the gaseous mixture from the evaporator to the absorber.

The Primary Examiner, in his decision denying appellant's motion to dissolve the interference, described the system of ap-

pellee in some detail based upon Fig. 1 of the application of appellee. The said figure and the reading thereof by the examiner are reproduced as follows:

evaporator E. This water does not evaporate in evaporator E, but passes through pipe 35 to a boiler B where it is evaporated by the heater of said boiler. The

In Fig. 1 of the Babcock application, water saturated with ammonia is heated in elements 10, G, 11. Ammonia vapor boils off from the ammonia water and passes through pipe 17 to rectifier R and thence to condenser C. In condenser C the ammonia vapor condenses to liquid and flows through conduit 22 to evaporator E. In evaporator E the liquid ammonia evaporates by diffusing through propane. Any water vapor that has been carried with the ammonia vapor from heater elements 10, G, 11 is condensed to liquid in condenser C and also passes to

vapor thus formed in boiler B passes through pipes 48 and 49 and through a jet J to a pipe 34. This jet is described in the Babcock description starting in page 7, line 11, as follows: "While the jet may be constructed in various ways the one illustrated consists of a small glass nozzle 44 mounted in a T connection in the pipe 34, near a Venturi portion 45 in the pipe 34. The nozzle may be held in position by means of a lead washer and suitable clamping rings mounted on the inside of the T connection of the pipe."

The jet of vapor formed in jet J causes a circulation of the mixture of ammonia and propane from evaporator E through opening 43, pipe 34 to an absorber A. Water from which the ammonia vapor has been boiled off passed from heater elements 10, G, 11 through overflow pipe 16, heat exchanger H and pipe 40 to absorber A. This water absorbs the ammonia in absorber A and the ammonia water thus formed passes from absorber A through conduit 12 and heat exchanger H back to heater elements 10, G, 11. The propane from which the ammonia has been stripped passes from absorber A, through a tank T and pipe 33 back to evaporator E. The tank T is sufficiently cooled by a water coil surrounding said tank so that the propane will condense to liquid therein. Because propane liquid is practically immiscible with either water or a solution of ammonia in water and as propane has a lower specific gravity than either water or ammonia water, it will collect on the ammonia water that is in the bottom of tank T and overflow in liquid form through pipe 33 to evaporator E. In evaporator E the liquid propane will evaporate like the liquid ammonia does by diffusion with the ammonia.

The Primary Examiner, in his decision denying the motion to dissolve, set out the chief contentions of appellant as follows:

"The party Randel further points out that his mixing tube or nozzle 19 is surrounded by the cold mixture that is continually passing from the evaporator and the party Randel contends that said surrounding mixture will cool mixing tube or nozzle 19 to produce condensation of the absorbent vapor therein. The party Randel contends that his patent clearly states that condensation of absorbent vapor takes place after and not before it passes through his nozzle 17. The party Randel contends that, if condensation did take place in nozzle 17 and not in the mixing tube or nozzle 19, the velocity of the vapor and its product would not be increased.

"The party Randel then points out that, in the Babcock application as originally filed, no mention is made of condensing absorbent vapor at all in the injector J, and furthermore, no mention is made of a condensation that would supplement the energy of the injected absorbent vapor as is specifically called for in the count.

The party Randel contends that, even if it could be said that condensation would take place in Babcock's injector J, it is possible that it would be at a point where it would not cause an increased velocity of the vapor and its product. For example, Babcock's nozzle 44 and not his Venturi portion 45 is surrounded by the cold mixture coming from the evaporator. If condensation occurred in nozzle 44, it would cause a decrease rather than an increase in the velocity of the absorbent vapor issuing from the jet. In conclusion, the party Randel contends that the party Babcock cannot make the count of the interference because he does not disclose condensing part of the vapor in his jet J and, in particular, he does not disclose that there would be condensation at a point where it would increase the velocity of the vapor and its product."

The Primary Examiner stated his disagreement therewith, and also his answer to a further contention, in the following language:

"The Examiner does not agree with this contention of the party Randel. Although the Babcock application, as originally filed, made no mention of condensation of the absorbent vapor taking place in jet J, it is considered that, if steam mixes with cold gases in such a structure of this kind, condensation will take place even though the Ventiru portion is not surrounded by the cold gases. To surround the Venturi portion with the cold gases coming from the evaporator might cause more condensation of the absorbent vapor in said portion but there will, nevertheless, be some condensation even though the Venturi portion is not surrounded. The claim calls for only a part of said vapor being condensed.

"As for the contention that condensation might take place in nozzle 44 of the Babcock apparatus and thus decrease rather than increase the velocity of the absorbent, the Examiner is of the opinion that there could not be more than a negligible amount of condensation take place in nozzle 44. Nozzle 44 is made of glass which is a poor conductor of heat and there will be very little heat transferred from the steam to the mixture of cold gases until the two actually meet beyond the nozzle 44.

"The party Randel next contends that the count of the interference calls for splitting up vapor which is produced by

the vaporizing of the absorbent. The Examiner does not agree with this contention. The count calls for 'passing said vapor to said injector' and although it requires part of said vapor to be condensed, it does not call for splitting up said vapor."

We think that from an examination of the application of appellee together with the contentions of appellant before the Primary Examiner and the reasons for rejecting the contentions it is clear that appellee can make count 1. No useful purpose can be served by any further discussion of this issue.

The Primary Examiner was of the opinion that appellee's claim 33, which is count 2 herein, could not be made by appellee for the reason that the claim calls for passing a portion of the vaporized absorbent through the injector while appellee passes all of the absorbent he vaporizes through the injector. The Board of Appeals, in reversing the decision of the Primary Examiner as to this claim, stated the view of the appellant (appellee here), saying: "* * * Appellant argues that the examiner is unwarranted in reading this unintended limitation into the claim because it is common and proper practice among applicants to employ such an expression as utilizing a portion of the vapor even though they show a construction where all of the vapor is utilized." And further on in the decision stated as follows: "Claim 6 of the Randel patent calls for the improvement which consists in vaporizing an absorbent, passing a portion of the vapor through an injector, condensing the vapor in the injector but without any limitation as to the remaining portion of the absorbent not used for circulating the refrigerant vapor between the absorber and the evaporator. It is believed that the party Babcock is entitled to make this claim."

Upon appeal from the decision of the Examiner of Interferences this particular question was not raised, but the Board of Appeals passed upon it, saying: "The matter of utilizing a portion of the vapor was considered in our decision on the motion to dissolve and no reason is seen for changing our position thereon."

Since this issue was considered by the board as above noted, and is raised before us by proper reason for appeal, it will be decided here.

In our opinion the board did not fully discuss this issue. Merely because there is no limitation in count 2 as to the remaining portion of the absorbent not used for circulating the refrigerant vapor between the absorbent and the evaporator, it does not necessarily follow that the part of the count reading "passing a portion of said vapor through an injector" does not make a distinct limitation in the count. Surely a portion of the vapor is not all of the vapor. It is a part or portion only. Appellee passes all of the vapor generated in his boiler B through the injector and therefore clearly the limitation contained in the count is not met. Appellee cannot make count 2.

We have carefully considered all of the points and contentions of the parties not discussed herein but do not think it necessary to refer to them, in view of our conclusion.

The decision of the Board of Appeals is affirmed as to count 1 and reversed as to count 2.